MICHAEL LYNCH *vs.* THE WILMINGTON CITY RAILWAY COMPANY,
    a corporation existing under the laws of the State of Dela-
    ware.

*Street Railway Company—Personal Injuries—Pleading—Evi-
    dence—Contributory Negligence—Nonsuit; Motion for
    New Trial.*

1.   When in an action for personal injuries it appears from the testi-
mony of the plaintiff that there was contributory negligence on his part, a
nonsuit should be entered.

2.   *Held* that under the circumstances of the case and the well
settled rules governing the granting of new trials, a new trial ought not
to be granted.

(*June  6,  1905.*)

LORE, C. J., and GRUBB and PENNEWILL, J. J., sitting.

*Horace Greely Knowles* for plaintiff.

*Walter H. Hayes, George N. Davis* and *Andrew C. Gray* for
defendant.

Superior Court, New Castle County, May Term, 1905.

ACTION ON THE CASE (No. 177, September Term, 1904),
to recover damages for personal injuries to the plaintiff and for
injuries to his horse and buggy, alleged to have been occasioned
by the negligence of the defendant in the operation of one of its
trolley cars, on Wednesday, November 4, 1903, at Eighth and
Tatnall Streets, in the city of Wilmington, by reason of which the
said car collided while going west on Eighth Street, with the team
of the plaintiff which was traveling north on Tatnall Street.

The specific acts of negligence relied upon were:

*First.* That the said defendant "so negligently, carelessly,
recklessly and unlawfully ran one of its cars along one of the
public streets in the city of Wilmington aforesaid, that the said
car ran into a certain carriage belonging to the said plaintiff, in

which said carriage the said plaintiff was then and there riding, then and there being lawfully in said street, the said plaintiff being in the exercise of due care and caution on his part, to wit, on the fourth day of November, A. D. 1903, at New Castle County aforesaid, and thereby the said carriage, property of the said plaintiff, was then and there greatly broken and damaged, * * * and by means of the premises the said car violently struck against the said plaintiff and with great force knocked certain parts of said carriage against him, * * * and thereby the said plaintiff was then and there badly hurt" etc.

*Second.* . The negligent running of the car at a high dangerous and unnecessary rate of speed.

*Third.* That the car was run without a head light, although it was in the night time.

*Fourth.* That there were no proper signals given as the car approached the crossing.

The testimony in behalf of the plaintiff as to the accident was in substance as follows:

The plaintiff testified that in November 1903, he was engaged in the grocery business in the city of Wilmington. That in the early evening of November fourth, 1903, about seven o'clock, he was driving his horse which was attached to a falling-top buggy, the top being about half way down, north on Tatnall Street and approaching Eighth Street in said city; that he was alone in the buggy, sitting on the right-hand side thereof, and the horse was proceeding in a slow trot,—almost in a walk. The plaintiff then further testified as follows:

"When I came to the first foot crossing of Eighth Street over Tatnall Street, I looked to my right toward Market Street, and I looked to my left, and did not see any car, or hear anything, and then I started across the track, and when the front wheel of my buggy was across the last track that the car was coming west on, the car just came right up and picked me up, and I did not see or hear anything before-hand. When I first looked I was coming by the first foot crossing at Eighth and Tatnall. I was driving on the right-hand side of Tatnall Street. After I was hit I did not

know anything until I was in the street; and the horse broke away from the buggy and went up Tatnall Street. And some man caught the horse and held him and the man took hold of me and took me in Boyle's Laundry, and someone wrapped my hand up where it was hurt, and I was about fainting and a man brought me some whiskey which I drank, and then I felt better. Then the ambulance came and they were going to take me to a hospital, but I told them to take me home and they did so."

The plaintiff was asked on cross examination the following questions:

"X. When you looked down towards Market Street was there anything to obstruct your view? A. Not a bit. X. Clear down to Market Street? A. I don't say I could see Market Street or anywhere near it. X. You could see to Orange Street? A. Probably, but it was turning dark. I don't say I could. X. Had you looked before-hand? A. No, sir; that was the first time I looked. X. Did you look after that? A. No, sir; I then looked up the other way, up Eighth Street and when I did not see anything coming in that direction, then I looked ahead of me because passers-by were going past the crossing. X. Were there any other teams there? A. Not that I saw. X. How were your reins, tight or loose? A. They were not very loose but a little bit; of course, you are not supposed to hold the horse in too tight. X. In what distance could you have stopped your horse there if you had tried? A. In one foot. X. At the time you looked for the car, when you were at the crossing, where was your horse's head? A. It was straight up Tatnall Street. X. How much ahead of the first crossing, or how near to the tracks? A. It was I suppose about a couple of yards from the tracks, or near there. X. It was a clear night? A. Yes, sir; it looked to be clear I believe. X. Was it moonlight? A. I don't think there was any moon out. X. Was there an arc light there that night at Eighth and Tatnall? I don't believe there was; not to my knowledge. X. Was not there one at Eighth and Orange? I don't know. I was not at Eighth and

Orange." On recall, the plaintiff described his injuries alleged to have resulted from the accident.

*Frank Boyle*, a witness for plaintiff, testified that he was proprietor of a laundry at Eighth and Tatnall Streets at the time of the accident. That he was familiar with the West Eighth Street and Tatnall Street and with the locality of the accident. That there was an ascending grade from Orange to Tatnall on West Eighth, and from Tatnall to West on the same street, a greater ascending grade. The witness was permitted, against the objection and exception of the defendant, to testify that Tatnall Street was used to a great extent as a thoroughfare by all businesses in the lower section of the city, and that it was a much used street in the early evening hours, more so than at any other time in the day. Witness further testified in coroboration of the plaintiff's testimony, as to the manner, character and extent of the latter's injuries.

A witness who observed the speed of the car, just before the collision, testified that it was running at about fifteen miles an hour, or between ten and fifteen miles an hour. Witness was not permitted to state, upon objection by defendant, whether or not the rate of speed mentioned was faster than usually made by cars on West Eighth Street. Witness further testified that it was "pretty well dusk" and the arc lights were lighted, but that the head light on the car was not lighted. That the bell on the car did not ring until the car hit the plaintiff's team. That the plaintiff was driving at a pretty moderate rate of speed, just a slow trot, at the time of the accident. Witness then continued:

"As Mr. Lynch approached Eighth Street he drew his horse up, as much as though he was looking up and down Eighth Street, and then he did not see any car coming, I suppose, and he came on; and his horse just got across the track when the car hit him. It hit right between the front wheel and the hind wheel. It threw Mr. Lynch out and he lighted on the ground, and I could not see for the wagon then, but as the car went on it took the wagon with it, and it demolished the wagon. I saw Mr. Lynch going on up Tatnall Street." The witness further testified that the car was not under control as it reached Tatnall Street. Wit-

ness then testified to the condition in which he found the plaintiff after the accident On cross examination the same witness said that he first observed Lynch driving up Tatnall Street towards Eighth about a hundred and fifty feet down Tatnall, that his attention was drawn to the team (the horse being a spotted one) before it was drawn to the car. That when he saw the team Lynch was sitting in the carriage driving at the rate of about six miles an hour. Then I looked and saw the car coming off the switch there on Eighth Street between Orange and Shipley. There was no head light on the car. I cannot say whether there were any lights inside the car or not. I could see the car all the way down. When the car was down about New Street—which is between Orange and Tatnall, and a little nearer to Orange than it is to Tatnall—Mr. Lynch was about sixty feet from the corner driving along about the same rate. I saw no other team there but his. I next saw the car just before it struck the wagon; the horse had just got across the track when the car struck between the front wheel and the hind wheel. After the car struck the wagon it ran on up the street right in front of the stable there before it was stopped. Just before Lynch drove on the track he kind of slackened his horse as much as though to look up and down the street. I did not see him looking up and down the street. When I first took notice of him he was lookng down, towards Orange Street. That was just before the car struck him I don't know how close he was to the car; the car was down about New Street when he was trying to look, but I don't suppose he could see it. He was then about fifty feet from the corner. He could not then see down as far as New Street, but could see over to Smith's Plumbing Shop, which is the fourth house on the north side of Eighth east of Tatnall, which was about fifty feet from the building line of Tatnall, and about half way between Tatnall and New Street. I did not see him look any more after that. I took my eye off him when he was coming on up. Then I looked down at the car and the car was coming. When the car was down about New Street sixty feet from Tatnall, and he was down about the colored house on Tatnall Street, about fifty feet from

Eighth, I thought to myself there is going to be a collision if somebody did not stop, or lookout. The team was then going about five or six miles an hour and the car about fifteen  miles an hour.

When the plaintiff rested, counsel for defendant moved for a nonsuit upon the ground that the evidence showed contributory negligence upon the part of the plaintiff; contending that according to the plaintiff's own testimony there was nothing to obstruct his view of the approaching car; that if he had looked he must have seen the car and that being the case he will not be heard to say that he looked and could not see; whether he looked and, having seen the car, chose to cross in front of it, or, being in a position where he could have seen the car, if he failed to look; in either case he would be guilty of contributory negligence.

The Court considered the motion over night, and upon the reconvening of Court the following morning, announced the following opinion, granting the nonsuit:

LORE, C. J.:—The Court are of opinion that from the testimony of the plaintiff it appears that there was contributory negligence upon the part of the plaintiff, and therefore we direct a nonsuit to be entered.

(The plaintiff refusing to accept the nonsuit, the Court instructed the jury to return a verdict for the defendant.).

Verdict, for defendant.

Thereupon a motion was made for a new trial and the following reasons in support thereof were filed:

1.—That the verdict was against the evidence.

2.—That the verdict was against the law.

3.—That the verdict was against the weight  of  the  evidence.

4.—That the evidence for the plaintiff was sufficient to warrant a verdict in his favor.

5.—That the Court erred in directing the jury to render a verdict for the defendant on the ground that the plaintiff was guilty of contributory negligence.

6.—That counsel for the plaintiff did not have an opportun-

ity to submit authorities to the Court to support his objection to the Court rendering the decision against the plaintiff and in favor of the defendant.

7.—That if a new trial were granted the result would probably be different and in favor of the plaintiff.

After argument the Court refused said motion in the following opinion:

LORE, C. J.:—The motion for a new trial in the case of Michael Lynch *vs.* The Wilmington City Railway Company was fully argued.    The Court have given it all the consideration possible, and we entirely concur in the judgment we are now about to announce.   We think, under the circumstances of this case and the well settled rules governing the granting of new trials, that a new trial ought not to be granted in this case, and we therefore discharge the rule.